IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re | ) | CIVIL NO.  09-00360 JMS/KSC |
| | ) | |
| SEAN RYAN O'KELLEY, | ) | ORDER DENYING DEFENDANTS |
| | ) | SEAN RYAN O'KELLEY AND |
| Debtor. | ) | ELAINE HORTIZUELA |
| _____ | ) | GUERRERO O'KELLEY'S |
| | ) | EMERGENCY MOTION FOR |
| COUNTRYWIDE HOME LOANS, | ) | STAY PENDING APPEAL |
| INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JONATHAN ERIC WILKERSON; | ) | |
| SEAN RYAN O'KELLEY; ELAINE | ) | |
| HORTIZUELA GUERRERO | ) | |
| O'KELLEY; PALEHUA | ) | |
| COMMUNITY ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANTS SEAN RYAN O'KELLEY AND
ELAINE HORTIZUELA GUERRERO O'KELLEY'S EMERGENCY
MOTION FOR STAY PENDING APPEAL**

## I.  INTRODUCTION

In this appeal from a bankruptcy action, Defendants Sean Ryan

O'Kelley and Elaine Hortizuela Guerrero O'Kelley ("Defendants") argue that the

bankruptcy court erroneously found that Defendants are in default on loans secured

by their home located at 92-925 Panana Street, Kapolei, Hawaii 96707 (the

"Panana Property"), and that Plaintiff Countrywide Home Loans Inc. ("Plaintiff" or "Countrywide") is entitled to a decree of foreclosure on the mortgages.

Currently before the court is Defendants' "Emergency Motion for Stay Pending Appeal" ("Motion for Stay"), in which they argue that the court should stay the foreclosure proceedings on the Panana Property because they have a likelihood of success in proving that Plaintiff is not entitled to foreclosure and Defendants will be irreparably harmed without a stay. Based on the following, the court finds that Defendants have not shown a likelihood of success on the merits and therefore DENIES Defendants' Motion for Stay.

## II. **BACKGROUND**

### A. **Factual Background**

#### 1. *The Mortgages*

On October 2004, Defendants and Jonathan Eric Wilkerson ("Wilkerson") offered to purchase the Panana Property for $417,000, which was accepted by the seller. Defendants had poor credit scores and Wilkerson therefore agreed to help Defendants purchase the Panana Property by using his good credit to secure mortgages on the property in his name. *See* Bankr. Doc. No. 12,[1] Wilkerson Decl. ¶ 3. Wilkerson and Defendants agreed that Defendants would

---

[1] "Bankr. Doc. No." refers to docket numbers in the bankruptcy action, *Countrywide Home Loans., Inc v. Wilkerson et al.*, Adversary Proceeding No. 08-90060 (Bankr. Haw.).

make the down payment and monthly payments on the Panana Property and ultimately live on the Panana Property, while Wilkerson would have a 10% interest in the house. *Id.*

Wilkerson obtained a first mortgage loan in the amount of $333,600 from Countrywide, secured by a mortgage on the Panana Property that was executed by Wilkerson and Defendants. *Id.* Exs. B, C. Wilkerson obtained a second home equity line of credit ("HELOC") in the amount of $41,700 from Countrywide, secured by a second mortgage on the Panana Property executed by Wilkerson and Defendants. *Id.* Exs. D, E. Both of the mortgages were in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as a nominee for Countrywide, its successors, and assigns. *See id.* Exs. C at 2, E at 1.

### 2.    *Ownership and Servicing of the Mortgages*

Plaintiff is the owner of the second mortgage loan. *See* Bankr. Doc. No. 57, Silva Decl. ¶ 4. Plaintiff sold the first mortgage loan, however, to Park Granada, who then sold it to Bank One, who finally sold it to Federal National Mortgage Association ("Fannie Mae"). *Id.* ¶¶ 5-7. Fannie Mae presently owns the first mortgage loan. *Id.* ¶ 7.

At the time the first mortgage loan was sold to Fannie Mae, Countrywide Home Loans Servicing, LP, a Countrywide-affiliated entity

("CHLS"), was the servicer of all Fannie Mae loans of record pursuant to a

Mortgage Selling and Servicing Contract. *See* Bankr. Doc. No. 55, Harris Decl.

¶¶ 4-5, Ex. B; Bankr. Doc. No. 56, Baingo Decl. ¶ 2.  CHLS in turn had an

agreement with Plaintiff for Plaintiff to perform the servicing functions for

mortgage loans -- including handling mortgage payments from mortgagors and,

when necessary, filing proof of claim forms and bringing foreclosure actions in its

own name for mortgage loans in default.[2] *See* Bankr. Doc. No. 55, Harris Decl.

¶¶ 8-9 and Ex. C at Part 1 § 202; Bankr. Doc. No. 56, Baingo Decl. ¶ 3.

Fannie Mae requires that when a servicer (or subservicer) forecloses

on a mortgage, the servicer must convey title of the property to Fannie Mae once

the servicer acquires the property.  Bankr. Doc. No. 55, Harris Decl. ¶ 9 and Ex. C

at Part VIII § 202.02.  Fannie Mae further generally requires servicers to initiate

legal proceedings: (1) in the servicer's name if the servicer is the mortgagee of

record; (2) in Fannie Mae's name if Fannie Mae is the mortgagee of record, or (3)

in the servicer's name if MERS is the mortgagee of record.  *Id.* Part VIII § 105.

---

[2] The Mortgage Selling and Servicing Contract between CHLS and Fannie Mae expressly allows CHLS to engage a subservicer so long as certain conditions are met. *See* Bankr. Doc. No. 55 at Ex. C Part I § 206.  Because Defendants did not argue that Plaintiff was not an authorized subservicer, any such argument is waived and the court assumes that Plaintiff was a proper subservicer on the first mortgage loan.

4

### 3.    *Default on the Mortgage Loans*

The first mortgage loan required Wilkerson to make monthly principal
and interest payments in the amount of $1,715.17 per month, while the second
mortgage loan required Wilkerson to pay a minimum of $177.07 per month.  *See*
Bankr. Doc. No. 12 Exs. B, G.  Starting in May 2005, payments on the loans
became sporadic, resulting in Plaintiff issuing several Notice of Default and
Acceleration letters on the first mortgage loan and issuing an Attorney Demand
Letter on the second mortgage loan.  *See id.* Exs. H, I.  The last payment Plaintiff
ever received on the first mortgage loan was on July 21, 2006, and the last payment
received on the second mortgage loan was on April 12, 2006.  *See id.* Exs. J, K.

## B.    **Procedural Background**

On February 22, 2007, Plaintiff  filed a foreclosure action on the
Panana Property in Hawaii Circuit Court.  Bankr. Doc. No. 5.  On April 9, 2007,
Defendants filed an Answer and Counterclaim.[3]  *Id.*

In July 2008, Plaintiff filed a motion for summary judgment seeking
judgment that the loans are in default and a decree of foreclosure on the mortgages.
Bankr. Doc. No. 12.  Sean O'Kelley subsequently filed for bankruptcy and

---

[3] Defendants' counterclaim was dismissed after the Hawaii Circuit Court granted
Plaintiff's motion for summary judgment on Defendants' counterclaim and denied Defendants'
cross-motion for summary judgment on Defendants' counterclaim.

removed the state foreclosure action to the Hawaii bankruptcy court.

In bankruptcy court, three days before the hearing on the motion for summary judgment, Defendants filed a motion to dismiss arguing that Plaintiff is not the real party in interest.  Bankr. Doc. No. 44.  During the hearing on the motion for summary judgment, the bankruptcy court orally granted the motion for summary judgment but declined to enter a written order until after it determined the motion to dismiss.  Bankr. Doc. No. 65.  The bankruptcy court ultimately denied Defendants' motion to dismiss and entered a written order granting Plaintiff's motion for summary judgment.  Bankr. Doc. Nos. 68, 69.

On August 6, 2009, Defendants appealed the bankruptcy court decision and also requested that the bankruptcy court stay the foreclosure proceedings pending appeal.  That same day, the bankruptcy court denied the request for stay.

On August 11, 2009, Defendants filed in this action an "Emergency Motion to Stay Pending Appeal."  On August 12, 2009, the court held a status conference regarding and set a briefing schedule.  Plaintiff filed its Opposition on September 15, 2009, and Defendants filed their Reply on September 23, 2009.  A hearing was held on October 5, 2009.

### III.  <u>STANDARD OF REVIEW</u>

Stays that do not involve a money judgment are discretionary.  *See In re Wymer*, 5 B.R. 802, 804 (B.A.P. 9th Cir. 1980).  "An appellant seeking a discretionary stay pending appeal under Bankruptcy Rule 8005 must prove: (1) appellant is likely to succeed on the merits of the appeal; (2) appellant will suffer irreparable injury; (3) no substantial harm will come to appellee; and (4) the stay will do no harm to the public interest."  *Universal Life Church v. United States*, 191 B.R. 433, 444 (E.D. Cal. 1995) (citations omitted).  The party requesting the stay has the burden on each of these elements and failure to satisfy even one element "dooms the motion."  *In re Irwin*, 338 B.R. 839, 843 (E.D. Cal. 2006) (citation and quotation signals omitted).

"When a bankruptcy court has ruled on the issue of a stay of its order pending appeal, the district court, sitting as an appellate court, reviews that decision for abuse of discretion."  *Id.* at 844 (citation and quotation signals omitted); *In re Wymer*, 5 B.R. at 804.  "'Discretion will be found to have been abused when the judicial action is arbitrary, fanciful or unreasonable which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court.'"  *In re Irwin*, 338 B.R. at 844 (quoting *In re Blackwell*, 162 B.R. 117, 119 (E.D. Pa. 1993)).

# IV.  DISCUSSION

Defendants argue that their appeal has a likelihood of success because Fannie Mae and not Plaintiff is the owner of the notes on the mortgage loans such that Plaintiff could not bring this action in its own name.  The court rejects this argument for several reasons.[4]

As an initial matter, Plaintiff owns the second mortgage loan and Defendants presented no evidence to the bankruptcy court contradicting Plaintiff's ownership.  It is therefore beyond dispute that Plaintiff rightfully brought a foreclosure action as to the second mortgage loan.

Further, Defendants' arguments regarding the first mortgage loan are meritless.  The court construes Defendants' Motion to Stay as raising two arguments -- that Plaintiff is not the real party in interest and that Plaintiff lacks standing.[5]  Whether a party is "real party in interest" is a different inquiry than

---

[4]  The bankruptcy court did not explain its reasoning for denying the motion to stay, but the court notes that the bankruptcy court had already considered extensive briefing on the merits when it denied Defendants' Motion for Stay.  Further, even reviewing Defendants' arguments de novo -- which the court must do for Defendants' contention that Plaintiff lacks standing, *see In re Coleman*, 560 F.3d 1000, 1003 (9th Cir. 2009), the court comes to the same conclusion that a stay is not warranted because there is no likelihood of success on the merits.

[5]  While not entirely clear, Defendants appear to raise several other issues that are either wholly vague and/or were not presented to the bankruptcy court.  For example, Defendants state that "[t]he O'Kelleys believe that the appellate court will find that the recordation of the mortgages should be nullified.  The O'Kelleys believe that the appellate court will find that the mortgages as between CHL and the O'Kelleys has been satisfied."  Defs.' Mot. at unnumbered pgs. 5-6.  Because Defendants provide no further explanation or argument whatsoever, the court finds that Defendants have failed to carry their burden of showing a likelihood of success on

whether the party has standing; a party may meet one but not the other.  *See Davis v. Yageo Corp.*, 481 F.3d 661, 678 (9th Cir. 2007); *In re Kang Jin Hwang*, 396 B.R. 757, 769 (Bankr. C.D. Cal. 2008).  In this case, both requirements are met.

Turning to the jurisdictional issue first, standing is a requirement grounded in Article III of the U.S. Constitution and a defect in standing cannot be waived by the parties.  *In re Kang Jin Hwang*, 396 B.R. at 768.  A litigant must have both constitutional standing and prudential standing for a federal court to exercise jurisdiction over the case.  *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).  Constitutional standing requires the plaintiff to "show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress."  *Id.* at 12.  In comparison, "prudential standing encompasses the general prohibition on a litigant's raising another person's legal rights."  *Id.* (citation and quotation signals omitted); *see also Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 971 (9th Cir. 2009).

Applying these principles, the court has no difficulty in determining

---

such arguments.  Defendants' argument that the loan documents and mortgages are not in the possession of any Countrywide affiliate and the second mortgage is a fraud were not made before the bankruptcy court.  The court will not address arguments made for the first time on appeal and deems those arguments waived.  *See Beech Aircraft Corp. v. United States*, 51 F.3d 834, 841 (9th Cir. 1995) (per curiam) ("Usually errors not raised in the trial court will not be considered on appeal."); *Cal. State Employees' Credit Union No. 6 v. Nelson*, 561 F.2d 1342, 1348 (9th Cir. 1977) (noting that an argument raised by debtor "was never disputed by Nelson in either the bankruptcy court or the district court" and therefore would not be considered by the court).

that Plaintiff has standing to seek foreclosure on the first mortgage loan.  Courts

have found that "a mortgage servicer has standing to participate in a debtor's

bankruptcy case by virtue of its pecuniary interest in collecting payments under the

terms of the note and mortgage."  *See In re Eads*, --- B.R. ---, 2009 WL 3047888,

at *7 n.12 (Bankr. E.D. Tex. Sept. 18, 2009) (collecting cases).  Courts have also

found that a servicer's possession of the note (as opposed to being its legal

"holder") is sufficient to establish standing.  *In re Kang Jin Hwang*, 396 B.R. at

769 (citing *In re Conde-Dedonato*, 391 B.R. 247, 250-51 (Bankr. E.D.N.Y. 2008)).

Plaintiff has possession of the note for the first mortgage loan and as its servicer

has a pecuniary interest in the first mortgage loan.  Accordingly, the court finds

that Plaintiff has standing in this action.[6]

Turning to the real party in interest issue, Federal Rule of Civil

Procedure 17(a)(1) provides that "[a]n action must be prosecuted in the name of

the real party in interest."  Rule 17(a)(3), however, provides:

> **Joinder of the Real Party in Interest**.  The court may
> not dismiss an action for failure to prosecute in the name
> of the real party in interest until, after an objection, a
> reasonable time has been allowed for the real party in
> interest to ratify, join, or be substituted into the action.
> After ratification, joinder, or substitution, the action

---

[6] Defendants' reliance on *In re Nosek*, 406 B.R. 434 (D. Mass. 2009), is misplaced.  *In re Nosek* addresses sanctions, not standing, where the plaintiff was neither the holder nor the servicer of the mortgage loan and had misrepresented that it was the holder of the mortgage.

> proceeds as if it had been originally commenced by the real party in interest.

Rule 17(a)(3) "'is designed to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought.'" *Goodman v. United States*, 298 F.3d 1048, 1053 (9th Cir. 2002) (quoting 6A Wright, Miller & Kane, § 1555 at 412); *see also U.S. for Use & Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074 (9th Cir. 1989) ("The purpose of this portion of Rule 17(a) is to prevent forfeiture of an action when determination of the right party to sue is difficult or when an understandable mistake has been made.").

In this action, Fannie Mae ratified the action once Defendants objected that Plaintiff could bring this action in its own name. Specifically, in response to Defendants' motion to dismiss, Fannie Mae submitted a declaration by John H. Harris stating that Fannie Mae acknowledges that Plaintiff has authority to continue pursuing the foreclosure action and agrees to be bound by the results of the action. Bankr. Doc. No. 55, Harris Decl. ¶¶ 10-11. The timing of the ratification is proper because Federal Rule of Civil Procedure 17(a)(3) contemplates that ratification may occur *after* an objection is raised. Further, to the

extent Fannie Mae should have brought this action in its own name,[7] such mistake was understandable -- Fannie Mae requires actions to be brought in the servicer's name and caselaw has not fully resolved whether a servicer may bring an action in its own name. *See In re Kang Jin Hwang*, 396 B.R. at 767 (finding that servicer was not the real party in interest, but discussing caselaw to the contrary). Therefore, to the extent that this action should have been brought in Fannie Mae's name, any mistake by Plaintiff proceeding under its own name is wholly understandable and remedied through Fannie Mae's ratification.[8] *See Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004).

     In sum, Defendants have failed to show any likelihood of success on the merits of their appeal.  Accordingly, Defendants have failed to carry their burden in proving that they are entitled to a stay pending appeal.

///

///

---

     [7]  Because Fannie Mae ratified the action, the court need not determine whether Countrywide properly brought this action in its name only.

     [8]  Defendants also argue that Countrywide and Fannie Mae cannot hold and/or claim ownership of the same mortgage note at the same time, but Countrywide and Fannie Mare are not claiming ownership of the same mortgage note.  Rather, Countrywide is pursuing this action as servicer of the mortgage note and Fannie Mae has ratified (i.e., agreed to be bound by the result of) this action.  While it is true that Countrywide did not disclose that it was merely the servicer of the mortgage when it first brought this action, any such error was remedied by Fannie Mae's ratification of the action and no prejudice was caused to Defendants.

## V.  <u>CONCLUSION</u>

Based on the above, the court DENIES Defendants' Motion to Stay.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 5, 2009.



               /s/ J. Michael Seabright
               J. Michael Seabright
               United States District Judge

*Countrywide Home Loans, Inc. v. Wilkerson et al.*, Civ. No. 09-00360 JMS/KSC, Order Denying Defendants Sean Ryan O'Kelley and Elaine Hortizuela Guerrero O'Kelley's Emergency Motion for Stay Pending Appeal