IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re | ) | CIVIL NO.  09-00360 JMS/KSC |
| | ) | |
| SEAN RYAN O'KELLEY, | ) | ORDER AFFIRMING |
| | ) | BANKRUPTCY COURT'S |
| Debtor. | ) | ORDERS (1) DENYING |
| _____ | ) | DEFENDANTS' MOTION TO |
| | ) | DISMISS; (2) GRANTING |
| COUNTRYWIDE HOME LOANS, | ) | PLAINTIFF'S MOTION FOR |
| INC., | ) | SUMMARY JUDGMENT; AND |
| | ) | (3) DENYING DEFENDANTS' |
| Plaintiff, | ) | MOTION FOR |
| | ) | RECONSIDERATION |
| v. | ) | |
| | ) | |
| JONATHAN ERIC WILKERSON; | ) | |
| SEAN RYAN O'KELLEY; ELAINE | ) | |
| HORTIZUELA GUERRERO | ) | |
| O'KELLEY; PALEHUA | ) | |
| COMMUNITY ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER AFFIRMING BANKRUPTCY COURT'S ORDERS (1) DENYING DEFENDANTS' MOTION TO DISMISS; (2) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (3) DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**

## I.  INTRODUCTION

In this appeal from a bankruptcy action, Defendants Sean Ryan

O'Kelley and Elaine Hortizuela Guerrero O'Kelley ("Defendants") argue that the

bankruptcy court erroneously found that Defendants are in default on loans secured

by their home located at 92-925 Panana Street, Kapolei, Hawaii 96707 (the

"Panana Property"), and that Plaintiff Countrywide Home Loans Inc. ("Plaintiff

or "Countrywide") is entitled to a decree of foreclosure on the mortgages.  Based

on the following, the court AFFIRMS the bankruptcy court's decisions.

## II.  BACKGROUND

### A.    Factual Background

#### 1.    *The Mortgages*

On October 2004, Defendants and Jonathan Eric Wilkerson

("Wilkerson") offered to purchase the Panana Property for $417,000, which was

accepted by the seller.  Defendants had poor credit scores and Wilkerson therefore

agreed to help Defendants purchase the Panana Property by using his good credit

to secure mortgages on the property in his name.  *See* Bankr. Doc. No. 12,[1]

Wilkerson Decl. ¶ 3.  Wilkerson and Defendants agreed that Defendants would

make the down payment and monthly payments on the Panana Property and

ultimately live on the Panana Property, while Wilkerson would have a 10% interest

in the house.  *Id.*; *see also* Bankr. Doc. No. 7, O'Kelley Decl. ¶ 3.

Wilkerson obtained a first mortgage loan in the amount of $333,600

from Countrywide, secured by a mortgage on the Panana Property that was

---

[1]  "Bankr. Doc. No." refers to docket numbers in the bankruptcy action, *Countrywide Home Loans., Inc v. Wilkerson et al.*, Adversary Proceeding No. 08-90060 (Bankr. Haw.).

2

executed by Wilkerson and Defendants.  Bankr. Doc. No. 12, Exs. B, C.

Wilkerson obtained a second home equity line of credit ("HELOC") in the amount

of $41,700 from Countrywide, secured by a second mortgage on the Panana

Property executed by Wilkerson and Defendants.  *Id.* Exs. D, E.  Both of the

mortgages were in favor of Mortgage Electronic Registration Systems, Inc.

("MERS"), acting solely as a nominee for Countrywide, its successors, and

assigns.  *See id.* Exs. C at 2, E at 1.

### 2.   *Ownership and Servicing of the Mortgages*

Plaintiff is the owner of the second mortgage loan.  *See* Bankr. Doc.

No. 57, Silva Decl. ¶ 4.  Plaintiff sold the first mortgage loan, however, to Park

Granada, who then sold it to Bank One, who finally sold it to Federal National

Mortgage Association ("Fannie Mae").  *Id.* ¶¶ 5-7.  Fannie Mae presently owns the

first mortgage loan.[2]  *Id.* ¶ 7.

At the time the first mortgage loan was sold to Fannie Mae,

Countrywide Home Loans Servicing, LP, a Countrywide-affiliated entity

("CHLS"), was the servicer of all Fannie Mae loans of record pursuant to a

Mortgage Selling and Servicing Contract.  *See* Bankr. Doc. No. 55, Harris Decl.

---

[2] Defendants now dispute whether Fannie Mae owns the first mortgage loan, but as
described below, Defendants did not timely raise this argument with the bankruptcy court and
therefore the court will not consider this argument.

¶¶ 4-5, Ex. B; Bankr. Doc. No. 56, Baingo Decl. ¶ 2.  CHLS in turn had an agreement with Plaintiff for Plaintiff to perform the servicing functions for mortgage loans -- including handling mortgage payments from mortgagors and, when necessary, filing proof of claim forms and bringing foreclosure actions in its own name for mortgage loans in default.[3]  *See* Bankr. Doc. No. 55, Harris Decl. ¶¶ 8-9 and Ex. C at Part 1 § 202; Bankr. Doc. No. 56, Baingo Decl. ¶ 3.

Fannie Mae requires that when a servicer (or subservicer) forecloses on a mortgage, the servicer must convey title of the property to Fannie Mae once the servicer acquires the property.  Bankr. Doc. No. 55, Harris Decl. ¶ 9 and Ex. C at Part VIII § 202.02.  Fannie Mae further generally requires servicers to initiate legal proceedings: (1) in the servicer's name if the servicer is the mortgagee of record; (2) in Fannie Mae's name if Fannie Mae is the mortgagee of record, or (3) in the servicer's name if MERS is the mortgagee of record.  *Id.* Part VIII § 105.

### 3.      *Default on the Mortgage Loans*

The first mortgage loan required Wilkerson to make monthly principal and interest payments in the amount of $1,715.17 per month, while the second

---

[3]  The Mortgage Selling and Servicing Contract between CHLS and Fannie Mae expressly allows CHLS to engage a subservicer so long as certain conditions are met.  *See* Bankr. Doc. No. 55 at Ex. C Part I § 206.  Because Defendants did not argue in the bankruptcy proceeding that Plaintiff was not an authorized subservicer, any such argument is waived and the court assumes that Plaintiff was a proper subservicer on the first mortgage loan.

mortgage loan required Wilkerson to pay a minimum of $177.07 per month. *See*

Bankr. Doc. No. 12 Exs. B, G.  Starting in May 2005, payments on the loans

became sporadic, resulting in Plaintiff issuing several Notice of Default and

Acceleration letters on the first mortgage loan and issuing an Attorney Demand

Letter on the second mortgage loan. *See id.* Exs. H, I.  The last payment Plaintiff

ever received on the first mortgage loan was on July 21, 2006, and the last payment

received on the second mortgage loan was on April 12, 2006. *See id.* Exs. J, K.

**B.    Procedural Background**

On February 22, 2007, Plaintiff filed a foreclosure action on the

Panana Property in Hawaii Circuit Court.  Bankr. Doc. No. 5.  On April 9, 2007,

Defendants filed an Answer and Counterclaim.[4]  *Id.*

In July 2008, Plaintiff filed a motion for summary judgment seeking

judgment that the loans are in default and a decree of foreclosure on the mortgages,

as well as summary judgment on Defendants' counterclaims.  Bankr. Doc. No. 12.

Sean O'Kelley subsequently filed for bankruptcy and removed the state foreclosure

action to the Hawaii bankruptcy court.  Bankr. Doc. No. 1.

In bankruptcy court, three days before the hearing on the motion for

---

[4]  Defendants' counterclaim was dismissed after the Hawaii Circuit Court granted
Plaintiff's motion for summary judgment on Defendants' counterclaim and denied Defendants'
cross-motion for summary judgment on Defendants' counterclaim. Defendants were
subsequently permitted, however, to file new counterclaims.

summary judgment, Defendants filed a motion to dismiss arguing that Plaintiff is not the real party in interest. Bankr. Doc. No. 44. During the hearing on the motion for summary judgment, the bankruptcy court orally granted the motion for summary judgment but declined to enter a written order until after it determined the motion to dismiss. Bankr. Doc. No. 65. The bankruptcy court ultimately denied Defendants' motion to dismiss and entered a written order granting Plaintiff's motion for summary judgment. Bankr. Doc. Nos. 68, 69. Judgment was entered on July 15, 2009. Bankr. Doc. No. 70. On July 20, 2009, Defendants filed a Motion for Reconsideration of the order granting summary judgment and the final judgement, Bankr. Doc. No. 77, which the court denied on July 24, 2009. Doc. No. 79.

On August 6, 2009, Defendants appealed the bankruptcy court decision. Defendants filed their Opening Brief on September 22, 2009, Plaintiff filed its Answering Brief on October 8, 2009, and Defendants filed their Reply on October 20, 2009. A hearing was held on October 26, 2009.

### III. STANDARDS OF REVIEW

**A.** **Motion to Dismiss**

The court must review de novo the bankruptcy court's decision on the motion to dismiss, and may affirm on any ground fairly supported by the record.

*In re Warren*, 568 F.3d 1113, 1116 (9th Cir. 2009); *Metcalf v. Golden*, 488 F.3d
836, 839 (9th Cir. 2007).

**B.     Summary Judgment**

   The court must review de novo the bankruptcy court's decision on
summary judgment.  *In re AFI Holding, Inc.*, 525 F.3d 700, 702 (9th Cir. 2008).
"Summary judgment is to be granted if the pleadings and supporting documents,
viewed in the light most favorable to the non-moving party, show that there is no
genuine issue as to a material fact and the moving party is entitled to judgment as a
matter of law."  *Id.* (citing Fed. R. Civ. P. 56(c)).

**C.     Motion for Reconsideration**

   The court must review the bankruptcy court's decision denying
Defendants' Motion for Reconsideration for abuse of discretion.  *In re Weiner*, 161
F.3d 1216, 1217 (9th Cir. 1998).

## IV.  <u>DISCUSSION</u>

   While Defendants' specific arguments are difficult to discern,
Defendants generally argue that the bankruptcy court erred by (1) denying
Defendants' Motion to Dismiss, which had argued that Plaintiff lacked standing
and was not the real party in interest, (2) granting summary judgment to Plaintiff
and finding that it is entitled to foreclose on the Panana Property, and (3) denying

Defendants' Motion for Reconsideration, which raised new arguments against entry of summary judgment.[5]  Based on the following, the court AFFIRMS the bankruptcy court's orders and judgment in favor of Plaintiff.

## A.     Defendants' Motion to Dismiss

In their Motion to Dismiss, Defendants argued that Plaintiff lacked standing to bring this action and was not the real party in interest because it is only the servicer of the mortgage loans, as opposed to their owner.  Whether a party is "real party in interest" is a different inquiry than whether the party has standing; a party may meet one requirement but not the other.  *See Davis v. Yageo Corp.*, 481 F.3d 661, 678 (9th Cir. 2007); *In re Kang Jin Hwang*, 396 B.R. 757, 769 (Bankr. C.D. Cal. 2008).  Based upon a de novo review, the court finds that both of these requirements are met.

### 1.     Standing

Standing is a requirement grounded in Article III of the U.S.

---

[5]  Plaintiff argues that the court should summarily affirm the bankruptcy court's decisions because Defendants completely failed to follow the briefing requirements outlined in Federal Rules of Bankruptcy Procedure 8009(b) and 8010 and Local Bankruptcy Rule 8009-3.  *See* Pl.'s Answering Br. 2 n.2.  The court agrees that Defendants' failure to follow these rules -- especially their failure to provide a statement of the issues presented, cite to the record, or provide an appendix of the required excerpts of record -- makes the court's review of Defendants' arguments much more difficult because the court cannot easily determine what arguments were previously made before the bankruptcy court and cannot readily determine what evidence Defendants rely on to argue that there is a genuine issue of material fact.  The court finds, however, that the sanction of summary affirmance is too severe a sanction and addresses the merits of Defendants' arguments to the extent they can be understood.

Constitution and a defect in standing cannot be waived by the parties. *In re Kang Jin Hwang*, 396 B.R. at 768. A litigant must have both constitutional standing and prudential standing for a federal court to exercise jurisdiction over the case. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). Constitutional standing requires the plaintiff to "show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." *Id.* at 12. In comparison, "prudential standing encompasses the general prohibition on a litigant's raising another person's legal rights." *Id.* (citation and quotation signals omitted); *see also Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 971 (9th Cir. 2009).

Applying these principles, the court has no difficulty in determining that Plaintiff has standing to seek foreclosure on the first mortgage loan. Courts have found that "a mortgage servicer has standing to participate in a debtor's bankruptcy case by virtue of its pecuniary interest in collecting payments under the terms of the note and mortgage." *See In re Eads*, --- B.R. ---, 2009 WL 3047888, at *7 n.12 (Bankr. E.D. Tex. Sept. 18, 2009) (collecting cases). Courts have also found that a servicer's possession of the note (as opposed to being its legal "holder") is sufficient to establish standing. *In re Kang Jin Hwang*, 396 B.R. at 769 (citing *In re Conde-Dedonato*, 391 B.R. 247, 250-51 (Bankr. E.D.N.Y. 2008)).

9

Because Plaintiff has possession of the note for the first mortgage loan and as its servicer has a pecuniary interest in it, Plaintiff has standing in this action.

In opposition, Defendant questions whether Plaintiff has possession of the first mortgage loan.  Plaintiff, however, submitted evidence to the bankruptcy court that the original note for the first mortgage loan is in the physical possession of Recon Trust Company, a Countrywide affiliate, and therefore may be obtained by Plaintiff at any time upon request.  Bankr. Doc. No. 57, Silva Decl. ¶ 8.  In the bankruptcy action, Defendants did not present any evidence to dispute this fact and Defendants' mere argument is insufficient to rebut Plaintiff's standing. Accordingly, based on a de novo review, the court finds that the bankruptcy court properly determined that Plaintiff has standing.

### 2.   *Real Party in Interest*

Federal Rule of Civil Procedure 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest."  Rule 17(a)(3), however, provides:

> **Joinder of the Real Party in Interest**.  The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

10

Rule 17(a)(3) "'is designed to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought.'" *Goodman v. United States*, 298 F.3d 1048, 1053 (9th Cir. 2002) (quoting 6A Wright, Miller & Kane, § 1555 at 412); *see also U.S. for Use & Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074 (9th Cir. 1989) ("The purpose of this portion of Rule 17(a) is to prevent forfeiture of an action when determination of the right party to sue is difficult or when an understandable mistake has been made.").

        In this action, Fannie Mae ratified the action once Defendants objected to Plaintiff bringing this action in its own name.  Specifically, in response to Defendants' motion to dismiss, Fannie Mae submitted a declaration by John H. Harris, Director of Servicing Portfolio Management for Fannie Mae, stating that Fannie Mae acknowledges that Plaintiff has authority to continue pursuing the foreclosure action and agrees to be bound by the results of the action.  Bankr. Doc. No. 55, Harris Decl. ¶¶ 10-11.  The timing of the ratification is proper because Federal Rule of Civil Procedure 17(a)(3) contemplates that ratification may occur *after* an objection is raised.  Further, to the extent Fannie Mae should have brought this action in its own name,[6] such mistake was understandable -- Fannie Mae

_____

    [6] Because Fannie Mae ratified the action, the court need not determine whether Countrywide properly brought this action in its name only.

requires actions to be brought in the servicer's name and caselaw has not fully resolved whether a servicer may bring an action in its own name.[7]  *See In re Kang Jin Hwang*, 396 B.R. at 767 (finding that servicer was not the real party in interest, but discussing caselaw to the contrary).  Therefore, to the extent that this action should have been brought in Fannie Mae's name, any mistake by Plaintiff proceeding under its own name is wholly understandable and remedied through Fannie Mae's ratification.  *See Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004).

In opposition, Defendants argue that Fannie Mae's ratification is improper because Fannie Mae acknowledged only that Plaintiff has authority to *continue* pursuing the foreclosure action, as opposed to authority to *commence* the action.  Defs.' Appeal 20-22; *see also* Bankr. Doc. No. 55, Harris Decl. ¶¶ 10-11. Defendants rely on Hawaii Rule of Civil Procedure 17(a), which states that the real party in interest must ratify the "commencement of action."  This rule, however, is inapplicable to this federal action and Federal Rule of Civil Procedure 17 does not

---

[7]  Defendants makes various arguments that Plaintiff's failure to disclose that Fannie Mae owned the loans is misconduct requiring dismissal of this action, *see*, *e.g.*, Defs.' Appeal 21, 24, but presented absolutely no evidence to the bankruptcy court to support such assertions.  The court therefore rejects out of hand that Plaintiff committed any misconduct in litigating this action.  The court further notes that the lack of disclosure that Fannie Mae owned the first mortgage loan did not prejudice Defendants in any way -- this fact does not change the defaults on both mortgage loans and that Fannie Mae authorized Plaintiff to seek foreclosure.

include such requirement.[8]

In sum, the court's de novo review reveals that the bankruptcy court properly denied Plaintiffs' Motion to Dismiss.

## B.   Plaintiff's Motion for Summary Judgment

In the Hawaii state action, Plaintiff moved for summary judgment seeking a decree of foreclosure and a dismissal of all of Defendants' counterclaims. The bankruptcy court granted Plaintiffs' Motion for Summary Judgment, and indeed, the evidence presented establishes that (1) Defendants and Wilkerson had executed two mortgages on the Panana Property to secure two loans taken out by Wilkerson to purchase the Panana Property; and (2) Wilkerson defaulted on the loans, entitling Plaintiff to proceed with foreclosure on the Panana Property.  On appeal, Defendants raise a number of arguments why, despite this evidence,

---

[8]  Defendants raise additional arguments, but the court deems them waived due to Defendants' failure to timely raise them.  Specifically, Defendants argue that the bankruptcy court erred by allowing Fannie Mae to ratify the action without evidence that it owns the mortgages.  Defs.' Appeal 25.  Defendants did not raise this argument until their Reply in support of their Motion to Dismiss, and in fact had asserted in their Motion to Dismiss that Fannie Mae owns the mortgages.  *See* Bankr. Doc. No. 44 at 2; *id.* O'Kelley Decl.  Defendants may not raise a new issue for the first time in a reply brief.  *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990).

Defendants also argue that the court should have required Fannie Mae to join this action pursuant to Federal Rule of Civil Procedure 19, as opposed to merely ratify it.  Defs.' Appeal 25-26.  Defendants did not raise this argument at all before the bankruptcy court and therefore have waived it.  Further, even if the court did address this argument, Defendants' summary argument completely ignores the two-part analysis under Rule 19 and therefore Defendants have failed to carry their burden.  *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (stating that the moving party has the burden of persuasion in arguing for dismissal under Federal Rule of Civil Procedure 19).

Plaintiff is not entitled to summary judgment.  Based on a de novo review of

Defendants' arguments, the court finds that the bankruptcy court properly

determined that summary judgment should be granted in favor of Plaintiff.

First, Defendants argue that the two mortgages should be "nullified"

as unrecordable because a notary public was not present as required by Hawaii

Revised Statutes ("HRS") § 502-41 when Defendants signed the mortgages, and

the notary public did not call any interlineations or changes in the documents to

Defendants' attention as required by HRS § 502-61.  Defs.' Appeal 6-9.  These

HRS provisions are directed to protecting third parties and affect only whether the

documents are recordable, *see* HRS § 502-41 (outlining when an instrument may

be recorded); HRS § 502-63 (providing that no instrument with changes or

interlineations may be recorded unless initialed by a notary), and do not suggest

that failure to follow these requirements nullify the document as between the

parties.  *See Markham v. Markham*, 80 Haw. 274, 277, 909 P.2d 602, 605 (Haw.

App. 1996) ("It is plain that recordation merely provides notice of a conveyance to

third parties and evidence of the conveyance.").  Indeed, whether the mortgages

were recordable does not affect the fact that they are enforceable between the

parties.  *See id.* at 610, 909 P.2d at 282 ("Even if the deed had no acknowledgment,

or its equivalent, at all, it would still be good between the parties.  As between the

14

parties acknowledgment of a deed is not necessary." (quotations omitted)); *Pang v. Kee*, 49 Haw. 62, 73, 412 P.2d 326, 332 (1966) ("[E]ven if the certificate had been false and the deed not properly acknowledged this would not affect the validity of the deed as between the parties to the deed.").

Second, Defendants argue that the first mortgage is no longer enforceable because the first mortgage note was satisfied when Plaintiff sold it to a third party. Defs.' Appeal 10-12, 27-28. Defendants' argument is absurd. The sale of the note underlying the first mortgage does not extinguish the debt owed; rather, the buyer of the note takes the place of the original mortgagee and is "vested with all the powers and rights of the [original mortgagee]."[9] *Beneficial Haw., Inc. v. Kida*, 96 Haw. 289, 314 n.9, 30 P.3d 895, 920 n.9 (2001) (quotations omitted).

Third, while not clear whatsoever, Defendants appear to argue that summary judgment is inappropriate because the mortgages were made in favor of MERS and there were no recorded conveyances from MERS to other parties such that there is a question of fact who owns and/or possesses the mortgages and

---

[9] Defendants further suggest that the first mortgage is void pursuant to HRS § 502-83 because "[w]hen [Plaintiff] sold the loan, any recordation or transfer of the mortgage is considered void." Defs.' Appeal 12. HRS § 502-83 provides that conveyances that are not recorded are void against a subsequent bona fide purchaser and has no application to these facts.

notes.[10]  Defs.' Appeal 12-15.  That MERS was the mortgagee of record does not create a genuine issue of material fact -- MERS is simply a company created "to track ownership interests in residential mortgages[;] mortgage lenders subscribe to MERS" and "agree to appoint MERS to act as their common agent on mortgages they register with the MERS system."  *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96, 861 N.E.2d 81, 84 (2006).  In general, a MERS mortgage will be recorded, naming MERS the lender's nominee or mortgagee of record, which allows the actual lender to transfer ownership or servicing rights without publicly recording these transfers.  *Id.*  All of the evidence presented indicates that MERS was the mortgagee only as a nominee for Plaintiff, its successors, and assigns.  *See* Bankr. Doc. No. 12, Exs. C at 2, E at 1.  With MERS as the mortgagee only as nominee for Plaintiff, Plaintiff was allowed to, and did, transfer the first mortgage without recording the transaction.  Accordingly, Defendants fail to show that a genuine issue of material fact exists regarding MERS' role in these transactions that would prevent Plaintiff from foreclosing on the mortgages.

        Fourth, Defendants argue that summary judgment is not appropriate because Defendants did not intend to enter into a second mortgage loan and their

---

[10]  Defendants raised this argument in their Motion to Dismiss, not in opposition to Plaintiff's Motion for Summary Judgment.  Regardless of where Defendants made this argument, however, it lacks merit.

names were not on the second mortgage when it was executed.[11]  Defs.' Appeal 15-

18.  The evidence contradicts Defendants' arguments -- Defendants admitted that

they executed the second mortgage as borrowers.  *See* Bankr. Doc. No. 10,

O'Kelley Decl. ¶ 6; *see also* Bankr. Doc. No. 12, Ex. E.

        Finally, Defendants argue that the bankruptcy court "overlooked"

their counterclaims for fraud, negligence, and breach of contract.  Defs.' Appeal

26-27.  Defendants point to the same evidence and arguments that they argue

creates a genuine issue of material against summary judgment on Plaintiffs' claim

for foreclosure -- that the mortgages included alterations, that a notary was not

present when they signed them, and that Defendants did not intend to enter into a

second mortgage.  As explained above, however, the fact that the mortgages

included minor alterations and a notary was not present when Defendants signed

them does not void the mortgages and does not support Defendants' counterclaims

for the same reasons discussed above.  Further, regardless of what Defendants

intended, the undisputed evidence establishes that Defendants signed the second

---

     [11]  Defendants further argue that Plaintiff did not comply with the second mortgage's notice requirements before seeking foreclosure.  *See* Defs.' Appeal 18-19.  Defendants did not raise this argument until their Reply in support of their Motion to Dismiss.  Accordingly, neither the bankruptcy court nor this court need address this argument.  Further, even if the court did address this argument, it lacks merit because Plaintiff did not have to provide notice on the second mortgage once the foreclosure action was instituted regarding the first mortgage.  As a junior lien, the second mortgage was required to become a part of the action.  *See*, *e.g.*, HRS § 667-2 (providing that "[a]ll prior and subsequent mortgage creditors, whose names are or can be discovered by the party foreclosing a mortgage, shall be made parties to the action").

mortgage as borrowers such that their intent alone cannot support their counterclaims.

In sum, Defendants have failed to raise any genuine issue of material fact precluding summary judgment in favor of Plaintiff.

## C.   Motion for Reconsideration

"Reconsideration is appropriate if the [] court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.  There may also be other, highly unusual, circumstances warranting reconsideration." *Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted); *see also Turner v. Burlington No. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003); *Circuit City Stores, Inc. v. Mantor*, 417 F.3d 1060, 1063-64 n.1 (9th Cir. 2005); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).

The bankruptcy court summarily denied Defendants' Motion for Reconsideration, which rehashed many of the arguments that the court has already addressed above.  Defendants now argue that the bankruptcy court should have granted their Motion for Reconsideration because (1) the bankruptcy court granted Plaintiff's Motion for Summary Judgment before Plaintiff discovered that Plaintiff

did not own the first mortgage loan; and (2) Plaintiff did not have any interest in the Panana Property because it is only the servicer of the first mortgage loan and was paid in full when Plaintiff sold it.  Defs.' Appeal 28-29.

> To the extent Defendants' first argument purports to proffer newly discovered facts, Defendants' "facts" are not supported by the record.  When it granted Plaintiff's Motion for Summary Judgment, the bankruptcy court had before it Defendant's Motion to Dismiss arguing that Plaintiff did not own the first mortgage loan.  The bankruptcy court further delayed entering a written order granting summary judgment until it had determined Defendants' Motion to Dismiss.  Accordingly, Defendants' discovery that Plaintiff did not own the first mortgage loan was not a new fact supporting reconsideration and as explained above, is not a fact that shows any error in the bankruptcy court's decisions on the motions to dismiss and for summary judgment.

> Defendants' second argument -- that reconsideration is warranted because Plaintiff does not have any interest in the Panana Property -- does not support reconsideration either because Defendants previously made this argument to the bankruptcy court and as explained above, the bankruptcy court properly rejected this argument.  Plaintiff does have an interest in the Panana Property as its servicer and Plaintiff's sale of the first mortgage loan merely transferred the loan to

19

another party and did not satisfy the obligation.

The court therefore finds that the bankruptcy court did not abuse its discretion in denying Defendants' Motion for Reconsideration.

## V.  CONCLUSION

Based on the above, the court AFFIRMS the bankruptcy court's orders: (1) denying Defendants' Motion to Dismiss; (2) granting Plaintiff's Motion for Summary Judgment; and (3) denying Defendants' Motion for Reconsideration.  The Clerk of Court is ordered to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 27, 2009.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Countrywide Home Loans, Inc. v. Wilkerson et al.*, Civ. No. 09-00360 JMS/KSC, Order Affirming Bankruptcy Court's Orders (1) Denying Defendants' Motion to Dismiss; (2) Granting Plaintiff's Motion for Summary Judgment; and (3) Denying Defendants' Motion for Reconsideration